**SWIFT & CO. FERTILIZER WORKS v. HARRIS et al.**

**No. 16272.**

Court of Appeal of Louisiana. Orleans.
March 9, 1936.

See, also, 163 So. 757.

Schwing & Obier, of Plaquemine, for appellant Lucille Harris.

Chas. F. Fletchinger, of New Orleans, for appellee.

WESTERFIELD, Judge.

The Swift & Co. Fertilizer Works filed a petition in the Twenty-Fourth judicial district court for the parish of Jefferson, alleging that Rosamond Harris, a laborer employed by it, was injured in the course of his employment on June 26, 1934, and died the next day as a result thereof; that three persons have made demand for compensation, to wit, Florence Harvey Harris, claiming to be the surviving widow, Sylvia Harris, claiming to be a dependent daughter, and Lucille Harris, claiming to be the surviving and dependent mother; that it is informed that none of the three claimants are entitled to compensation; that it paid the funeral expenses of its deceased employee, amounting to $150. The petition concluded with a prayer that the three claimants be cited in order that it could be determined what their rights might be in the premises. The three individuals thus impleaded answered and asserted their respective claims in the district court, each of which, after a hearing, was rejected.

Florence Harvey Harris and Sylvia Harris Jones failed to perfect their appeal, and are therefore not before the court; the only remaining appellant being Lucille Harris, the mother of the deceased.

Under the Compensation Law as amended by Act No. 242 of 1928, the surviving spouse and children living with the deceased at the time of his death are conclusively presumed to be dependents. In the case of all others, dependency is required to be determined in accordance with the "facts as they may be at the time of the accident and death." Section 8, subd. 2 (D). It is conceded that, if anything be due the deceased's mother, the amount is 32½ per cent. of $12, the deceased's weekly wage, or $3.90 per week for 300 weeks.

While the alleged wife and daughter originally impleaded by the plaintiff are no longer before the court, their testimony adduced during the trial of the case is of interest. It indicates that the deceased had, for a number of years, lived in the town of Marrero in the parish of Jefferson, where he maintained somewhat irregular marital relations with Florence Harvey, with whom he had participated in a belated wedding ceremony, that Sylvia Harris, the alleged daughter, now the wife of Joseph Jones, was born a few months after the deceased was married to her mother, and that the deceased did not devote himself entirely to his irregularly established household, having before his death established other domestic relations. The mother of the deceased resides at Maringouin, in Iberville parish. Florence Harvey Harris testified that Harris gave

her his entire salary of $12 per week. She is corroborated by her daughter and, in a manner, by some employees of Swift & Co., who testified that they saw her go to the weekly pay table and receive money from her husband. The testimony of these witnesses evidently failed to impress the trial judge, and it has had a similar effect upon us. We mention it only because of its bearing upon the claim of the dependency of the mother. For example, the mother's claim is supported by the testimony of another son, a brother of the deceased, in whose house she resided. He testified that the deceased sent his mother $4 per week out of each week's salary, and by this means she maintained herself in his household; his earnings being only $.90 a day, a sum insufficient for the needs of his immediate family. The mother was aged and infirm, too old and too infirm to go to the court in Jefferson parish where the case was tried, and we have not the benefit of her testimony. If Florence Harris received Harris' entire salary, there would not be anything left to give his mother, but we cannot believe that Rosamond Harris gave her all of his money as soon as he received it, as she claimed. There is no indication of unusual devotion which would justify such self-sacrifice. On the contrary, his errant affections had been otherwise bestowed, for he was not living with Florence Harris at the time of his death, which was, doubtless, the ground upon which her claim was rejected.

On the other hand, there is only the testimony of her son to support the contention of actual dependency on the part of Lucille Harris, and this evidence was not favored with credulity by the learned judge of the trial court. While there is no supporting testimony, there are two corroborating circumstances. In the first place, there is no doubt of the financial distress of the decedent's mother. She was certainly in need of assistance. She was old and sick, too old and too sick to go to court and testify in her own behalf, and then there was the fact that she was his mother, and there was therefore a natural inclination to be of help and assistance to his needy mother. There is perhaps, with the exception of the parental, no stronger natural affection than filial, which is none the less strong as a motive for human conduct, in individuals whose habits and environment are degraded and whose sensibilities are dulled by ignorance, or as a result of a drab and sordid existence. In our opinion, it is extremely likely that Rosamond Harris did contribute to the support and maintenance of his aged and infirm mother. We have the word of his brother that he did so, and that he (the brother) actually saw the dollars taken from the envelopes which were mailed to her by Rosamond. It was such a natural thing for Rosamond to do and the brother's testimony so plausible and consistent with natural impulses that we are constrained to consider the fact of the mother's dependency as having been established, notwithstanding our great respect for the conclusion of our brother below, particularly upon questions of fact.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of Lucille Harris and against Swift & Co. Fertilizer Works, condemning it to pay 32½ per cent. of $12, or $3.90 per week, for a period of 300 weeks, beginning June 27, 1934, and all costs.

Reversed.

JANVIER, J., not having heard the argument, takes no part.